IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In Re: Weirton Medical Center Data Breach Litigation | Civil No. 5:24-cv-61<br><br>Judge Thomas S. Kleeh |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND ENTRY OF SCHEDULING ORDER**

**I.    INTRODUCTION**

Plaintiffs Leslie Telek, Judy Mullins, Trish Yano, and Matthew Foltz ("Plaintiffs"), by counsel and on behalf of the proposed settlement class, hereby respectfully submit this Memorandum in Support of their Motion for Preliminary Approval of Settlement and Entry of Scheduling Order. Plaintiffs and Defendant Weirton Medical Center ("Defendant" or "Weirton," and collectively, the "Parties") reached this settlement after exchange of discovery and the Parties fully briefed a Motion to Dismiss, and only after participating in formal mediation with an experienced mediator, Jill Sperber, Esq., on March 12, 2025.

Defendant Weirton Medical Center, Inc. ("Weirton" or "Defendant") does not oppose certification of the Settlement Class solely for purposes of facilitating the settlement sought to be approved in this motion, and it does not oppose the relief sought in this motion. Plaintiffs strongly believe the Settlement is fair, reasonable, and adequate, and that the Court should grant preliminary approval and notice should be distributed to Class Members.

Plaintiffs respectfully request that the Court enter an Order: (1) preliminarily approving the Parties' proposed Settlement Agreement (the "Settlement Agreement" or "S.A.") attached as Exhibit A; (2) provisionally certifying the proposed settlement class for settlement purposes only;

1

(3) appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel; (4) approving the form, manner, and content of class notice and the procedures for settlement class members to opt out or object; (5) approving Simpluris as the settlement administrator, (6) establishing a schedule to complete the tasks necessary to effectuate the proposed settlement, and (7) staying the action pending Final Approval of the Settlement (except the stay of proceedings shall not prevent the filing of any motions, declarations, and other filings necessary to obtain and preserve final judicial approval of this Agreement). For the reasons set forth more particularly below, Plaintiffs respectfully request that the Court grant this Motion. Defendant Weirton has agreed to the proposed order of preliminary approval attached to this motion, for settlement purposes only.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant Weirton is a hospital that provides care to patients across West Virginia, Ohio, and Pennsylvania. During the ordinary course of operating its health facilities and providing healthcare, Defendant collects from its patients' Private Information. Between January 14, and January 18, 2024, cybercriminals gained access to the Private Information of 26,725 individuals by infiltrating Defendant's protected network and servers (the "Data Incident"). The information that was stolen in the Data Incident included the full names, Social Security numbers, and balances due on medical bills (collectively "Private Information") of Defendant's current and former patients. In March of 2024, Defendant began notifying by letter individuals who may have had their Private Information impacted in the Data Incident

As a result, on March 28, 2024, Plaintiff Yano filed the first Class Action Complaint, *Trish Yano v. Weirton Medical Center, Inc.*, Case No. 24-CV-00061. On March 29, 2024, Plaintiff Foltz filed his Class Action Complaint, *Matthew Foltz v. Weirton Medical Center, Inc.*, Case No. 24-

CV00063. Thereafter, Plaintiffs Telek and Mullins filed *Leslie Telek v. Weirton Medical Center, Inc.*, Case No. 24-CV-00069 and *Judy Mullins v. Weirton Medical Center, Inc*., Case No. 24-CV-00071, respectively.

On June 13, 2024, Plaintiffs filed a motion to consolidate the cases (ECF No. 13), which the Court granted on June 21, 2024. ECF No. 15. On August 8, 2024, Plaintiffs filed a Consolidated Class Action Complaint. ECF No. 22. On August 16, 2024, the Parties submitted a Joint 26(f) Report, indicating that the Parties would exchange informal disclosures by August 30, 2024. ECF No. 24. Concurrently, Defendant filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) on September 23, 2024 (ECF No. 28), and Plaintiffs filed a Response in Opposition on October 23, 2024. ECF No. 30. After receiving a brief extension, Defendant's Reply was filed on November 6, 2024. ECF No. 33. On November 22, 2024, the Parties filed a joint Motion to Stay Proceedings pending mediation (ECF No. 34), which the Court granted on November 25, 2024. ECF No. 35.

The Parties began discussing early resolution and scheduled a mediation with mediator Jill Sperber, Esq., an experienced data breach class action mediator. *See* Declaration of Philip J. Krzeski in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, ¶6. In advance of the mediation, Plaintiffs propounded informal discovery requests to learn as much as possible in advance of mediation. *Id.,* ¶7. Through the provision of informal discovery, Plaintiffs were able to evaluate the merits of Defendant's position. *Id*. , ¶7. The Parties also submitted mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. The Parties mediated on March 12, 2025, and after a full day of arms-length negotiations, agreed upon the material terms of a Settlement. *Id*., ¶6. The Settlement Agreement contemplates multiple forms of recovery for the Plaintiffs and Class Members.

3

### III.   PROPOSED SETTLEMENT

#### A.   Terms of the Settlement Agreement

##### 1. Proposed Settlement Class

The Proposed Settlement will provide substantial relief for the Settlement Class, which is defined as: "all persons in the United States whose Private Information was potentially accessible as a result of the Data Incident, including those who were sent notice of the Data Incident." S.A. ¶ 46. Excluded from the Settlement Class are all persons who are governing board members of Defendant and the Court, the Court's immediate family, and Court staff. *Id.* The Settlement Class contains approximately 26,725 individuals.

##### 2. Settlement Benefits

Settlement Class Members may claim: (a) defined relief of up to $5,000.00 per Settlement Class Member upon presentment of documented losses related to the Data Incident, or (b) a $50 Alternative Cash Payment. S.A. ¶ 14. In addition to monetary relief, Settlement Class Members are eligible to claim three years of credit monitoring and identity theft protection services, as set forth below.

###### a.   Documented Losses

The first category of payments is designed to provide reimbursement for documented losses and expenses related to the Data Incident. *Id.* ¶ 14(a). All Settlement Class Members who submit a Valid Claim using the Claim Form are eligible for any documented and attested-to out-of-pocket expenses directly associated with dealing with the Data Incident, not to exceed $5,000.00 per Settlement Class Member, that were incurred more likely than not as a result of the Data Incident. *Id.* Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id.*

b.  Alternative Cash Payment

As an alternative to the documented loss payment, a Settlement Class Member may elect a flat cash payment in the amount of $50.00. *Id.* ¶ 14(b).

c.  Credit Monitoring and Identity Theft Protection

In addition to, and regardless of whether they submit a claim for monetary relief, Settlement Class Members may claim three (3) years of one-bureau credit monitoring and identity theft protection services. *Id.* ¶ 14(c). The identity theft monitoring will include identity theft insurance of at least $1 million. *Id.*

**B.     Notice and Administration Provisions**

"In the context of a class action, the due process requirements of the Fifth Amendment require '[r]easonable notice combined with an opportunity to be heard and withdraw from the class.'" *Groves v. Roy G. Hildreth & Son, Inc.*, No. 2:08-cv-820, 2011 WL 4382708 *3 (S.D.W. Va. Sept. 20, 2011) (quoting *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D.W. Va. 2005)); *see also Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011). Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see also Robinson v. 3rd Group Properties, LLC*, No. 1:18-cv-00646, 2020 WL 4558978, at *3 (M.D. N.C. Jan. 29, 2020); *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-743, 2010 WL 2671506, at *8 (S.D.W. Va. July 1, 2010); *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07- cv-423, 2008 WL 5377783, at *3 (S.D.W. Va. Dec. 19, 2008). The notice must "inform potential class members of the nature of the action, that class members may make an appearance through counsel, that class members may exclude themselves from the settlement, and that the class judgment will have a binding effect on class members who are not excluded." *Groves*, 2011 WL 4382708, at *3;

*Helmick*, 2010 WL 2671506, at *8. Silence on the part of potential class members receiving the notice equates to "tacit consent to the court's jurisdiction." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 231; see also *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions),* 148 F.3d 283, 306 (3d Cir. 1998).

The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person, and the possible methods of identification. See *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). In determining the reasonableness of the effort required, the court must look to the "anticipated results, costs, and amount involved." *In re Nissan*, 552 F.2d at 1099. "[D]ue process is satisfied 'where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to opt out.'" *Domonoske*, 790 F. Supp. 2d at 472 (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985)).

Weirton has reviewed its records to determine the name, last-known address, and telephone numbers, if available, for the Settlement Class Members. Weirton will provide the Settlement Administrator with the last known address. With such information, notice will be given to the Settlement Class via individual notice, which will be given by mailing the short-form Postcard Notice (Exhibit A to the Settlement Agreement) to the last known mailing address for Settlement Class Members. *Id.* ¶ 35. A Long Notice, attached to the Settlement Agreement as Exhibit B, will also be posted on the settlement website, which will be established by the Claims Administrator, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses. *Id.* ¶ 21, 25. The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Furthermore, a toll-free help line staffed with a

reasonable number of live operators shall be made available to address Settlement Class Members' inquiries. *Id.* Moreover, Defendant has retained Simpluris, a nationally recognized and well-regarded class action settlement administrator, to serve as Claims Administrator, subject to the Court's approval.

The parties' proposed Notice of Class Settlement provides a full description of the nature of the action, proposed settlement, and requested attorneys' fees. See *Domonoske*, 790 F. Supp. 2d at 472. The Notice describes in plain English the terms and operation of the settlement, the considerations that caused Class Counsel to conclude that the settlement is fair and adequate, the procedure for objecting to and opting out of the settlement, and the date of the fairness hearing.

## IV. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e*); Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Domonoske*, 790 F. Supp. 2d at 472; *Muhammad*, 2008 WL 5377783, at *3. "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; see also *Groves*, 2011 WL 4382708, at *4.

Such approval typically involves a two-step process of "preliminary" and "final" approval. See *Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.*, No. 97-3804, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing Manual's twostep process); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992). In the first stage, the parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the Class is notified and a fairness hearing scheduled at which the Court will determine whether to approve the settlement. *See*

*Bicking v. Mitchell Rubenstein & Assocs.*, No. 3:11-cv-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) ("Prior to granting final approval, the court must direct reasonable notice to all potentially affected class members, allow time for objection, and provide a 'fairness hearing.'").

Upon submission to the court of the parties' proposed settlement, a court will undertake a preliminary evaluation to determine whether the proposed settlement "appears to fall within the range of possible approval." *Manual for Complex Litigation* § 30.41, at 265 (3d ed. 2000); see also *All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (quoting *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)); *Horton*, 855 F. Supp. at 827 (holding that question at preliminary approval stage is simply whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). The bar for obtaining preliminary approval is low. All Bromine Antitrust Plaintiffs, 203 F.R.D. at 416.

In determining whether a settlement meets the requirements of Rule 23, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *Groves*, 2011 WL 4382708, at *4. Pursuant to Rule 23(e)(2), the district court may approve the settlement "only after a hearing and only on finding that it is fair, reasonable and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:

      (i) the costs, risks, and delay of trial and appeal;

      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These recent amendments to Rule 23 are consistent with longstanding Fourth Circuit case law and law in this district recognizing that a class settlement is fair when it is "reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Bicking*, 2011 WL 5325674, at *4. The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, No. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. 2002); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Muhammad*, 2008 WL 5377783, at *4.

    In assessing the fairness of a proposed settlement, the Court must look at the following factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practice*, 952 F.3d 471, 484 (4th Cir. 2020); see also *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *4; *Loudermilk Servs., Inc.*, No. 3:04-cv-966, 2009 WL 728518, at *8 (S.D.W. Va. Mar. 18, 2009). In

9

determining the adequacy of the proposed settlement, the Court must consider: (1) relative strength of plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Id*.; see also *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig*., 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs*., Inc., 2009 WL 72818, at *3.

Consideration of the applicable factors reveals that the proposed Settlement Agreement should be preliminarily approved. The settlement was indeed the product of serious, informed, arm's-length, and non-collusive negotiations. Before settling this matter, the parties exchanged discovery, fully briefed Defendant's Motion to Dismiss, and the Parties had participated in informal negotiations and mediation conducted by an experienced mediator. By the time mediation occurred, Plaintiffs' Counsel and Defendant's Counsel, who are both experienced with complex class action claims such as these, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986). Moreover, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver v. Compass Bank et al.*, 2015 WL 4999953, No. 13-cv-00222, at *4 (N.D. Cal. Aug. 21, 2015) (quoting *Villegas v. J.P. Morgan Chase & Co.,* No. cv 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)).

The settlement has no obvious deficiencies and does not grant preferential treatment to the class representative or any segments of the class. Each Settlement Class Member will receive a

significant cash award and data security protections. The intrinsic value of the net settlement payment to class members is readily apparent when one considers the risks inherent in continued and protracted litigation, the costs and uncertainty of litigation, and the expense and delay that accompany the appeal process.

The alternative to bringing this case as a class action is bringing hundreds of individual claims against Weirton. Realistically, the alternative to a class action under the present circumstances is no action at all. "[C]ompromise and settlement are favored by the law." *Groves*, 2011 WL 4382708, at *4. The proposed settlement serves the overriding public interest in settling litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The complexity, expense, and duration of class action litigation are factors that mitigate in favor of preliminary approval of a settlement. *In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson,* 521 F.3d 153, 157 (3d Cir. 1975); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974). While the parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Muhammad,* 2008 WL 4382708, at *4. "'When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" *Id*. at *4 (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, proposed class counsel, who recommends the settlement, is skilled and experienced in data security class actions. *See* Declaration of Philip J.

Krzeski in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement attached as Exhibit C. See *Muhammad v. Nat'l City Mortg., Inc.*, No. 2:07-0423, 2008 WL 5377783 (S.D. W. Va. Dec. 19, 2008) (recognizing that class counsel are "skilled and experienced in class action litigation, and ha[s] served as class counsel in several cases, including consumer lending cases.") See also *Dijkstra v. Carenbauer*, No. 5:11-cv-00152, 2016 WL 6804980, at *2 (N.D. W. Va. July 12, 2016) (same).

V. **CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE**

    A. **The Class Satisfies the Numerosity, Commonality, Typicality and Adequacy Elements of Rule 23(a)**

        1. **Numerosity**

Rule 23(a)(1) requires that the class be of sufficient size that joinder of all members is "impracticable." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; *Bicking*, 2011 WL 5325674, at *2. "In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; see also *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.1984); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967). Factors to consider are "the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required." *Christman v. Am. Cyanamid Co.*, 92 F.R.D. 441, 451 (N.D.W. Va. 1981); see also *McGlothlin v. Connors*, 142 F.R.D. 626, 632 (W.D. Va. 1992).

In the present case, the Class consists of 26,725 individuals who had their information lost in the Data Incident. Individual joinder of all of those impacted by the Data Incident is impracticable, especially considering the relatively small recovery sought and the geographic

dispersal of class members across the state of West Virginia (and elsewhere). Courts have certified class actions with far fewer members. See, e.g., *Cypress*, 375 F.2d at 653 (eighteen class members).

### 2. Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; see also *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Either common questions of law or fact can establish commonality. *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 161 (S.D.W. Va. 1996). Factual differences among the class members' cases will not preclude certification if the class members share the same legal theory. *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998); see also *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984); *Christman*, 92 F.R.D. at 452 n.28. The commonality requirement is subsumed under the more stringent predominance requirement of Rule 23(b). *Lienhart*, 255 F.3d at 147 n.4; *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237.

This action implicates the central and overriding common question of whether Defendant's failure to protect Private Information violated federal and West Virginia law. This question is common to all putative class members, as all have been subject to the same Data Incident. Accordingly, commonality is satisfied.

### 3. Typicality

To establish typicality under Rule 23(a)(3), the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Black*, 173

F.R.D. at 162. For purposes of typicality, there is a "'sufficient nexus . . . if the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory.'" *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238 (quoting *In re Trazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004)). Thus, the typicality rule assures that the class representatives' interests are "aligned" with those of the class. *Kennedy v. Sullivan*, 138 F.R.D. 484, 488 (N.D.W. Va. 1991).

Plaintiffs' claims are clearly aligned with those of the putative class members. The facts supporting Plaintiffs' claims are straightforward and typical of, if not identical to, the claims of the class members. Like all other class members, Plaintiffs were victims of the same Data Incident. As such, the proposed class satisfies the Rule 23(a)(3) typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238. The representative must show that there are no conflicts of interest between his interests and those of the class he seeks to represent and that he has the willingness and ability to play an active role in the litigation and vigorously represent the class, while protecting the interests of the absentee class members. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005); see also Rhone-Poulenc, 173 F.R.D at 162.

Plaintiffs have no interests that are antagonistic to or conflict in any way with the interests of the proposed class as a whole. Plaintiffs share an interest with the other class members in opposing Defendant's alleged collection practices, and have willingly stepped forward to pursue their claims on a class-wide basis. Plaintiffs have and will thus fairly and adequately protect the interests of the class.

### B. The Proposed Class Satisfies Rule 23(b)(3) Requirements of Predominance and Superiority

In order for Plaintiffs to satisfy Rule 23(b), the Court must find that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004); *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 239-40.

#### 1. Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that the questions of law or fact common to all class members predominate over questions pertaining to individual members. *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 239. Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart,* 255 F.3d at 142 (quoting *Amchem Prod., Inc.*, 521 U.S. at 623); *Gariety*, 368 F.3d at 362. When certifying a class for settlement purposes only, manageability problems that would arise if the class were litigated, and that would prevent certification of a litigation class, need not be considered. *See Newberg on Class Actions* s. 13:36, p. 438 (4th ed. 2002) (stating that "for a settlement class there are fewer procedural barriers for certification . . . . Where class counsel must still prove there are common questions of law or fact, manageability concerns should not prevent a settlement class from being certified."); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (U.S. 1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present

intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

The common question outlined above is broad and applies to all class members, and is readily capable of determination on a class-wide basis. Further, Defendant has identified class members using its internal records.

### 2. The Class Action is the Superior Method to Adjudicate Plaintiffs' Claims

Rule 23(b)(3) also requires the Court to find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Lienhart*, 255 F.3d at 147; *Bicking*, 2011 WL 5325674, at *3. Factors to be considered by the Court include: (1) class members' interests in individually controlling the prosecution or defense of separate actions; (2) extent and nature of any litigation concerning the controversy already begun by or against class members; (3) desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) likely difficulties in managing a class action. Fed. R. Civ. P. 23(b). Because this lawsuit concerns a settlement class, there is no concern with manageability of the case related to individualized affirmative defenses asserted by Defendant in opposition to certification. *Amchem Prods., Inc.*, 521 U.S. at 620. In the present case, as stated above, class members have little interest in prosecuting individual actions. As such, there is no better method available for the adjudication of the claims which might be brought by each individual class member. The alternative to bringing this case as a class action is bringing hundreds of cases. The relatively small recovery sought makes it highly unlikely that class members would pursue their claims on an individual basis. Accordingly, it is desirable to concentrate the litigation of these claims in this Court. See *Amchem Prods., Inc.*, 521 U.S. 591, 617 (1997) (observing that Rule 23(b) allows "vindication of the rights of groups of people who individually would be without

effective strength to bring their opponents into court at all."); *Bicking*, 2011 WL 5325674, at *4 (same). Further, "[s]ettling this case as a class action will achieve economies for both the litigants and the court" through a significant reduction in the "overall cost of complex litigation, allowing plaintiffs' attorneys to pool their resources and requiring defendants to litigate all potential claims at once, thereby leveling the playing field between the two sides." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 240; see also *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 842 (E.D.N.Y. 1984). Therefore, there is no other superior method of adjudicating the controversy because class settlement provides an efficient and appropriate resolution of the controversy. Plaintiffs have thus met the requirements of Rule 23(b)(3) for settlement purposes.

## VI. PROPOSED CLASS COUNSEL ARE QUALIFIED TO REPRESENT THE CLASS

Rule 23(g) requires that the Court appoint class counsel upon certification of the class. Factors for the Court to consider include: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representation of the class. Fed. R. Civ. P. 23(g)(1)(C)(i). Proposed class counsel, Chestnut Cambronne PA, are qualified and able to represent the class. Proposed class counsel have submitted a declaration outlining their wide-ranging experience litigating consumer protection, class action, and other complex cases. (Exhibit 2 – Decl. of Phillip Krzeski). As stated above, Plaintiffs' counsel performed substantial work in investigating, prosecuting and negotiating settlement of the case, and are qualified to serve as class counsel. See *Muhammad*, 2008 WL 537783, at *3 (recognizing skill and experience of plaintiff's counsel).

## VII.   PROPOSED SCHEDULE TO COMPLETE SETTLEMENT

The Court's calendar permitting, the parties propose the following schedule to complete the tasks necessary to effectuate the proposed settlement:

- Class Notice Mailed by: Fourteen (14) days after entry of the Court's Order granting preliminary approval of the Settlement.

- Objection/Exclusion Deadline: 70 days after the Preliminary Approval Order

- Fee Petition: 14 days prior to the Objection/Exclusion Deadline

- Final Approval Motion: 10 days before the Fairness Hearing

- Fairness Hearing: 110 days after Preliminary Approval Order

## VIII.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion and enter the submitted Proposed Order, (1) preliminarily approving the Parties' proposed Settlement Agreement (the "Settlement Agreement") attached as Exhibit A; (2) provisionally certifying the proposed settlement class for settlement purposes only; (3) appointing Plaintiffs as class representative and Plaintiffs' counsel as class counsel; (4) approving the form, manner, and content of class notice and the procedures for settlement class members to opt out or object; (5) approving Simpluris as the settlement administrator, (6) establishing a schedule to complete the tasks necessary to effectuate the proposed settlement, and (7) staying the action pending Final Approval of the Settlement (except the stay of proceedings shall not prevent the filing of any motions, declarations, and other filings necessary to obtain and preserve final judicial approval of this Agreement) and enjoining all persons in the Settlement Class or purporting to act on their behalf from commencing or prosecuting any action or proceeding against the Weirton asserting any of the Settled Claims.

Dated: June 13, 2025                     Respectfully submitted,

By: /s/ *Ryan McCune Donovan*
Ryan McCune Donovan (WVSB #11660)
J. Zak Ritchie (WVSB #11705)
**HISSAM FORMAN DONOVAN RITCHIE, PLLC**
PO Box 3983
Charleston, WV 25339
Telephone: (681) 265-3802
Fax: (304) 982-8056
*rdonovan@hfdrlaw.com*
*zritchie@hfdrlaw.com*

Philip J. Krzeski (Admitted *Pro Hac Vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55410-2138
Telephone: (612) 767-3602
*pkrzeski@chestnutcambronne.com*

*Interim Lead Counsel*

Terence R. Coates (Admitted *Pro Hac Vice*)
Jonathan T. Deters (Admitted *Pro Hac Vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*
*jdeters@msdlegal.com*

David K. Lietz (Admitted *Pro Hac Vice*)
**MILBERG COLEMAN BRYSON PHILLPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
*dlietz@milberg.com*

19

        Jeff Ostrow (Admitted *Pro Hac Vice*)
        **KOPELOWITZ OSTROW FERGUSON**
        **WEISELBERG GILBERT**
        One West Las Olas Blvd., Suite 500
        Fort Lauderdale, FL 33301
        Telephone: (954) 525-4100
        *ostrow@kolawyers.com*

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing has been served via email on counsel for Defendants on June 13, 2025.

        */s/ Ryan McCune Donovan*